PREVITE, Appellant,

v.

PREVITE, Appellee.

[Cite as *Previte v. Previte* (1994), 99 Ohio App.3d 347.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 94–L–019.

Decided Nov. 14, 1994.

348

*Howard W. Bernstein,* for appellant.

*Joseph R. Ulrich,* for appellee.

FORD, Presiding Judge.

This is an accelerated calendar appeal. Appellant, Marie Previte, n.k.a. Marie Ventresca, appeals from the order of the Lake County Court of Common Pleas, Domestic Relations Division, overruling her motion to modify child support.

Appellant and appellee, Nicholas Previte, were married and had one child, Mark, born on January 12, 1977. On October 28, 1977, the parties obtained a divorce, and appellee was required to pay $100 child support per month. On May 14, 1992, appellant filed a motion to modify child support, stating as the basis for a change in circumstances that she was disabled and, therefore, prevented from supporting herself, and that appellee was earning substantially more income than at the time of the last support order. Appellant has multiple sclerosis in its regressive form.

On July 13, 1992, appellant filed a motion to show cause, requesting that appellee show why he had failed to reimburse her for payment of Mark's medical bills as ordered by the court. After a hearing before a referee on November 18, 1992, a report was issued recommending that appellee pay the amount of $472.33 per month toward Mark's support and all of Mark's medical, dental, optical, and hospital expenses.

Subsequently, because of her disability and inability to work, appellant applied for Social Security benefits and was granted them. In January 1993, appellant began receiving a monthly pension in the amount of $680, as well as Social

Security disability benefits in the amount of $942. The minor child also began receiving monthly Social Security benefits in the amount of $471.

Appellee then filed a motion to modify child support on June 16, 1993, claiming a substantial change in circumstances, *i.e.,* appellant was now receiving monthly pension and Social Security benefits and the child monthly benefits because of appellant's disability.

On October 8, 1993, a hearing was held on appellee's motion before Referee Fram. On October 15, 1993, the referee's report was filed. The referee found that this was a case of first impression in Ohio because the previous cases involving Social Security awards received by a minor child concerned the *obligor's* disability (generally, the noncustodial parent) as giving rise to the child's award as opposed to the obligee's (usually the custodial parent) disability, as in the instant case. The referee further found that appellant was using the pension money to rebuild her savings account, which had been depleted from having to support herself and Mark from January 1992 through January 1993. Appellant had spent $13,000 from this account during that time. The money received by Mark from Social Security was being placed into savings for his college education.

The referee ultimately reasoned that the minor child's income should be credited entirely to the wife's, appellant's, "other annual income" column on the child support worksheet. He calculated appellee's monthly support obligation as $398.61 per month. He then concluded that these figures indicated a greater than ten-percent deviation from the previously ordered support, and, therefore, recommended that the motion to modify be granted.

Both parties objected to this report. A hearing was held before the court on November 23, 1993, which resulted in a judgment entry filed on January 3, 1994, in which the court amended in part and remanded in part the referee's recommendation. The court concluded that the child's total guideline-determined support requirements before payment of any monies was in the amount of $7,360 per year. This total support figure was obtained from division (D) of R.C. 3113.215. The court then subtracted from that total support figure the annual benefits paid to the minor child from Social Security in the amount of $5,652 ($471 × 12), which resulted in a remaining obligation of $1,708. Applying the parties' respective percentage obligations (sixty-seven percent for appellee; thirty-three percent for appellant) to the remaining support obligation, the court determined that appellee's monthly child support should be reduced to $95.36 plus poundage and appellant's to $46.97. Appellant filed a timely notice of appeal on February 1, 1994, and assigns the following as error:

"1. The trial court erred as a matter of law and to the prejudice of the appellant, by holding that social security disability payments, received on behalf

of the minor child, as a result of the appellant's disability, may be credited against the appellee's child support obligations.

"2. The trial court abused its discretion in substantially modifying the child support from $472.33 to $95.36 per month, when there had been no decrease in the appellee's income and the child's educational needs outweighed a modification."

As appellant's first and second assignments of error are significantly interrelated, they will be considered together.

■ Appellant contends that the trial court abused its discretion by offsetting in part appellee's child support obligation with the disability payments received on behalf of the minor child. In support of her argument, appellant cites an Indiana case, *Poynter v. Poynter* (Ind.App.1992), 590 N.E.2d 150. *Poynter* stands for the proposition that the disabled parent is entitled to have his or her child support obligations credited with the Social Security disability benefits received by the child because of that parent's disability, and that the total support obligation of both parents should not be reduced by the child's Social Security benefits prior to determining the share of each parent. *Id.* at 152.

In *Poynter,* the obligor-husband had a weekly gross income of $730, and the obligee-wife received Social Security disability benefits in the amount of $110 per week. Additionally, the children received $61.68 per week in Social Security disability benefits. The husband had an eighty-six percent support obligation, while the wife had a fourteen percent obligation. The total weekly cost of child support was $200 per week. The court concluded that the obligor-husband's support payment would be computed by taking eighty-six percent of the total child support cost of $200 per week ($172). *Id.* at 151–152. Similarly, the wife's obligation was determined by taking fourteen percent of $200 ($28) and then crediting that figure with the $61.86 of Social Security benefits the children received because of her disability. *Id.* at 152.

Concordantly, appellant here appears to be arguing that as the disabled obligee parent, her child support obligation alone (thirty-three percent of $7,360 annually or $202.40 per month) should be credited with the entire monthly Social Security disability benefits received by Mark because of her disability ($471), and that appellee should receive no credit whatsoever against his obligation for such monies. She contends that since Mark would be attending college shortly, the Social Security benefits received by him are being properly placed in a savings account for that purpose.

■ Preliminarily, we note that child support modification determinations will not be overturned unless the trial court abused its discretion, that is, unless the

decision is unreasonable, arbitrary and unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

Next, we recognize that the *Poynter* case, while supportive of appellant's argument and representative of the majority view, is a case from another state and is neither controlling nor persuasive authority as to the prevailing view in Ohio.

However, we also acknowledge, as did the referee and trial court, that this is apparently a case of first impression, since the typical scenario involves the *obligor* parent as the one receiving disability benefits and in whose name the minor child also receives benefits. See *Fugate v. Fugate* (July 3, 1990), Montgomery App. No. 12028, unreported, 1990 WL 98371; *In re Engel* (Oct. 4, 1990), Tuscarawas App. No. 90APO30019, unreported, 1990 WL 163754; *Taylor v. Taylor* (May 27, 1993), Cuyahoga App. No. 62249, unreported, 1993 WL 180198. These cases stand for the proposition that Social Security payments made to a child based on the obligor's disability should be credited to the obligor's current child support obligation.

The trial court in the instant case based its decision on the case of *McNeal v. Cofield* (1992), 78 Ohio App.3d 35, 603 N.E.2d 436. In *Cofield,* the obligor-husband had a monthly child support obligation of $264 per month, which represented forty-four percent of the total guideline-determined child support sum. He asked that his support amount be credited by the Social Security benefits the child received in the amount of $280 per month so that he would be relieved of his child support obligations. The court concluded that:

"*The proper method is to deduct all or part of the Social Security benefits received on behalf of the child from the guideline-determined necessary child support predicated upon the best interests of the child and equity to both parents.* If it be determined that the entire amount of Social Security benefits should be deducted from child support, the $600 per month guideline-determined child support need would be reduced by the amount of the Social Security payments, so that the remaining $320 per month need would be allocated between the parents in the manner set forth in the guideline determinations, and forty-four percent of that amount, or $140.80 per month, would be [obligor-husband's] reduced child support obligation." (Emphasis added.) *Id.* at 39, 603 N.E.2d at 438.

Thus, the court concluded that although Social Security payments for the benefit of a minor child must be considered in connection with child support payments made by the parent whose disability triggers the payments, "this does not justify crediting the *entire amount of the monthly benefit as attributable solely to the child support required to be paid by either parent.* The best interest of the child requires a different conclusion, one that will enure to the

benefit of the child, rather than to the sole benefit of either parent." (Emphasis added.) *Id.* at 39, 603 N.E.2d at 438.

It is clear from the foregoing excerpts that although *Cofield* involved a situation where the obligor parent had the disability which triggered Social Security benefits, the court was not limiting its holding to that situation. In fact, the court obviously contemplated a factual scenario where the parent whose retirement triggers the payments may not be the parent who has the child support obligation. Otherwise, the court would not have used the phrase "child support required to be paid by *either parent*" when referring to the manner in which the child's Social Security benefits should be applied to the parties' child support obligations. Therefore, it certainly appears that the court did not intend to preclude use of its formula in a situation where the parent receiving disability benefits may not necessarily be the obligor parent.

Furthermore, appellant argues that if the trial court's decision is affirmed, it will result in a windfall to appellee instead of an increase in the child's standard of living as should be the case when a parent's income rises. Again, she refers specifically to the fact that Mark has future educational needs which are being met by the monthly Social Security benefits he receives.

First, while we agree that saving money for a child's education is a noble endeavor, we observe that the record is totally devoid of any evidence of the child's actual educational requirements. The record does not indicate that the parties have reached an agreement as to what college the child will attend, or that there has been a determination regarding the parties' respective financial responsibilities toward the child's college education.

Next, an excerpt from the case of *Catlett v. Catlett* (1988), 55 Ohio App.3d 1, 561 N.E.2d 948, provides pertinent insight on this subject:

"Appellant received the benefits as [the child's] representative payee. In this capacity, she is required to apply the benefits towards *the child's current maintenance.* * * * Current maintenance includes the costs of obtaining food, shelter, clothing, medical care and personal comfort items.*" (Emphasis added). *Id.* at 6, 561 N.E.2d at 953.

Parenthetically, the *Cofield* court also stated as its rationale that "as a practical matter, the underlying intent of the Social Security benefit payments to a minor child is to give support to the child, which the parent receiving the Social Security benefits is unable to provide." 78 Ohio App.3d at 40, 603 N.E.2d at 439.

In the case at bar, the Social Security payments made to the minor child were being placed in a savings account and were not used for "current maintenance" as ordered. Therefore, the payments were not used as a substitute for the support which appellant, the parent receiving the benefits, was unable to provide. *Id.*

The payments were, in effect, being used for a purpose that these Social Security benefits were not intended to fulfill.

Accordingly, taking into consideration the fact that the record is devoid of evidence as to the child's educational needs and the parties' agreement thereto, and the case law cited by both parties, we cannot conclude that the court's decision was unreasonable, arbitrary, and unconscionable. Therefore, appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER and CACIOPPO, JJ., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.